Filed 12/24/25  P. v. Daniels CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>MARK JAMISON DANIELS,<br><br>      Defendant and Appellant. | D083366<br><br><br>(Super. Ct. No. SCE409964) |

APPEAL from a judgment of the Superior Court of San Diego County, John M. Thompson, Judge.  Affirmed.

Susan L. Ferguson for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Elizabeth M. Renner, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

A jury convicted Mark Jamison Daniels of 12 lewd acts against his daughter.  Challenging the sufficiency of the evidence on appeal, Daniels claims the sexual intent and victim age requirements of the offenses were not

established. Daniels further contends that by instructing the jury that the offenses allegedly occurred "on or about" specific dates (CALCRIM No. 207), the trial court eliminated the offenses' age elements and permitted the jury to convict Daniels twice for the same acts. Finding sufficient evidence for each count and no instructional error, we affirm the judgment.

## II. BACKGROUND

During her childhood, E. lived with her father, Daniels, her mother (Mother), and her younger brother (Brother) and sister. When E. was 11 or 12 years old, Daniels began touching E.'s buttocks. Daniels then started touching E.'s breasts when she was 13 or 14. Both acts continued frequently through the time E. was 18.

E. eventually reported Daniels to the police when she was 19, leading to Daniels's arrest. The San Diego County District Attorney's Office charged Daniels with four counts of lewd acts on a child under 14 (Pen. Code,[1] § 288, subd. (a)), and eight counts of lewd acts on a child 14 or 15 years of age (§ 288, subd. (c)). Prosecutors alleged the following acts and time periods for the offenses:

> Counts 1 and 2: buttocks touching when E. was 12 (April 24, 2013, through April 23, 2014);
>
> Counts 3 and 4: buttocks touching when E. was 13 (April 24, 2014, through April 23, 2015);
>
> Counts 5 and 6: buttocks touching when E. was 14 (April 24, 2015, through April 23, 2016);
>
> Counts 7 and 8: breast touching when E. was 14 (April 24, 2015, through April 23, 2016);
>
> Counts 9 and 10: buttocks touching when E. was 15 (April 24, 2016, through April 23, 2017);

---

[1] All further undesignated statutory references are to the Penal Code.

Counts 11 and 12: breast touching when E. was 15
(April 24, 2016, through April 23, 2017).

At trial, E. testified that Daniels would grab, fondle, and grope her buttocks for "long durations." E. also told the jury that Daniels would squeeze or run his hands down the sides of her breasts. According to E., Daniels began touching E.'s buttocks on a weekly basis when she was 11 or 12. When she was and 13 or 14, the touching began happening multiple times a day and expanded to her breasts. Both types of acts continued regularly until E. turned 18. Although Daniels would sometimes be discrete, this touching commonly happened in other family members' presence, like when Daniels would give E. long hugs upon arriving home from work.

E. testified that while Daniels committed these acts, he made moaning, sexual noises. Daniels also made comments about E.'s body, such as telling E. that she was "hot" and "sexy," and her breasts were nice. Daniels also touched E. under her clothes at times, unhooking her bra to rub her back and requesting that she wear leggings because they provided easy access.

E. also told the jury about numerous other instances of Daniels's sexually inappropriate behavior. E. testified that on at least one occasion Daniels put his face in E.'s breasts when she was 15 or 16. E. also described an incident when she was 15 or 16 where Daniels "grind[ed]" on E.'s leg and vaginal area with an erection. E. also said that while she was in high school, Daniels frequently made sexual jokes and comments about E. and acted like E. was his wife when they were in public.

On two occasions when E. was 16, she called Child Protective Services (CPS) to report Daniels. The first time she got scared and hung up. The second time, she gave a fake name (Jazz Thompson) and reported that

3

Daniels had been sexually abusing her for years, but ultimately was too fearful to pursue it.

E. acknowledged having a foggy memory of some of Daniels's acts, which she documented in a letter she wrote to police. E. attributed her memory problems to the trauma she experienced, noting she also has poor memory from when she was approximately 9 and 10 years old due to Celiac disease.

The trial court also admitted E.'s private diaries from when she was approximately 16 to 19 years old. One entry stated, " 'My dad just f------ said he wants to grab my "T&A" and that they're perfect. I asked him what that meant and he said, "tits and ass" and grabbed my ass.' " A separate entry stated, "my dad alternates between sexually abusing me and being mean to me . . . . He keeps asking me to shower with him saying he'll pay me as much as I want." Another stated, "my dad texted me that I make him hard and that when he was holding me, he told me I should appreciate that he's not playing with my nipples."

E.'s diaries also mentioned her mental health struggles, repeatedly referencing self-harm and suicide. The diaries also described sexual abuse from five other men.

Texts exchanged between Daniels and E. from late 2019 and early 2020 were also admitted. In these messages Daniels commented about E.'s body and sent her sexually explicit material. For example, in response to a picture of E., Daniels said, " '[o]h damn, that's hot,' " and E.'s " 'eyes look stunning.' " Other examples include a message where Daniels attached a dildo meme and asked E. if she needed one. Another text from Daniels stated that a link to " 'Welcome to Anal Sex 101' " is what every teen wants for Christmas.

4

Brother testified, describing an inappropriate relationship between Daniels and E. starting when E. was around 12 or 13 years old. Daniels and E. would spend long hours together late into the night, they made explicit sexual jokes, and when Daniels arrived home from work, he would give E. long hugs and rest his hand on her buttocks. Brother stated Daniels's strange and uncomfortable acts were normalized through repetition, he asked E. about it numerous times when she was 18, and once E. finally confirmed the inappropriate relationship, Brother reported it to the police.

Mother testified as well, stating Daniels started spending an inordinate amount of time with E. when she was 12 or 13. Mother noticed that when E. was 15 or 16 Daniels would frequently graze E.'s buttocks and breasts after long embraces. Mother also told the jury about an incident when E. was 16 or 17 where Daniels and E. were watching a movie behind a closed door and when Mother entered the room "it appeared [to her] that they both jumped apart, like you would expect to see maybe two teenagers do." By the time E. started high school, Mother began worrying that Daniels was treating E. as his wife, and she confronted Daniels about it when E. was around 16 to 18 years old. Mother explained that Daniels's acts were gradual, and she credited Daniels's innocent explanations while doubting herself. Mother confirmed that in hindsight, Daniels's behavior was obviously inappropriate.

The People also offered expert testimony from forensic interviewer, Christina Schultz. Schultz testified that child abuse perpetrators often progressively increase their inappropriate behavior to hide it, making it difficult for others to detect. Schultz also opined that child sex abuse victims often delay disclosure, and they usually do not recall the details of each incident when the abuse continues over years.

5

Detective Anthony Allmon testified similarly, stating that while E. had difficulty remembering specific individualized incidents, which may happen with victims of long term abuse, E. consistently reported that Daniels continuously touched her buttocks and breasts. Detective Allmon confirmed that a report had been made to CPS under the name Jazz Thompson.

Two of E.'s friends, A. D. and A. A., testified that E. disclosed sexual abuse by Daniels. A. D. was one of the men E. accused of sexual abuse in her diary; he denied any such abuse occurred. A. D. was, however, concerned E. would make a false sexual abuse allegation against him.

For the defense, Daniels's aunt and uncle testified, stating that Daniels and E. had a good relationship. Daniels's uncle never saw anything inappropriate between Daniels and E. and his aunt doubted E.'s sexual abuse allegations. Daniels testified on his own behalf, acknowledging he should not have sent E. sexually explicit material, but otherwise denying any wrongdoing.

The jury found Daniels guilty of all 12 counts. The trial court sentenced Daniels to eight years in prison.[2] Daniels's timely appeal followed.

## III. DISCUSSION

*A.    Sufficient Evidence Established That Daniels Repeatedly Touched E. With Sexual Intent When She Was 12 to 15 Years Old*

Daniels argues there was not substantial evidence proving that he touched E. with sexual intent, or that the acts occurred when E. was under 16 years old. Daniels claims E.'s testimony regarding the offenses lacked specificity, and there were equally plausible innocent explanations for his acts. Daniels asserts none of the people who observed the acts raised any

---

[2]    Daniels received six years for count 1, two years for count 2, concurrent six-year terms for counts 3 and 4, and concurrent two-year terms for counts 5 through 12.

6

concerns, Mother did not see any inappropriate behavior until E. was 15 or 16, and there was no independent evidence that he was a pedophile. Finally, Daniels challenges E.'s credibility, asserting that E. reported memory problems, she suffered from mental illness, and she accused several other men of assaulting her.

1. Section 288

To commit a lewd act under section 288, the perpetrator must act "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of" the perpetrator or the victim. (§ 288, subd. (a).) The victim must be under the age of 14 for a violation under subdivision (a) of the statute. (§ 288, subd. (a); counts 1–4.) And to violate subdivision (c), the victim must be either 14 or 15 years old. (§ 288, subd. (c)(1); counts 5–12.)[3]

Generic testimony may suffice to establish these elements; however:

> The victim, of course, must describe *the kind of act or acts committed* with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g., lewd conduct, intercourse, oral copulation or sodomy). Moreover, the victim must describe the *number of acts* committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., "twice a month" or "every time we went camping"). Finally, the victim must be able to describe *the general time period* in which these acts occurred (e.g., "the summer before my fourth grade," or "during each Sunday morning after he came to live with us"), to assure the acts were committed within the applicable limitation period. Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not

---

[3] Daniels also had to be at least 10 years older than E. to violate section 288, subdivision (c)(1), but that element is not in dispute.

7

essential to sustain a conviction. (*People v. Jones* (1990) 51 Cal.3d 294, 316.)

## 2. Standard of Review

When a defendant challenges the sufficiency of the evidence supporting a conviction, " ' "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 780.) We do " ' "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." ' " (*People v. Helzer* (2024) 15 Cal.5th 622, 646.)

## 3. Analysis

E. described the kind of acts committed (groping, fondling, grabbing, and squeezing her buttocks and breasts), the number of acts (starting weekly and progressing to multiple times a day), and the general time period in which these acts occurred (buttocks starting when E. was 11 or 12, breasts starting when she was 13 or 14, and both continuing to through the age of 18). E. also explained that Daniels made sexual noises and comments while committing these acts, and he occasionally touched her underneath her clothes. We therefore disagree that E.'s testimony was not specific enough to sustain the convictions for each count.

The jury also heard about Daniels's numerous other uncharged acts through E.'s testimony, E.'s diary, and Daniels's texts. This evidence was probative of Daniels's sexual intent, absence of mistake, and propensity to commit sexual offenses. (Evid. Code, §§ 1101, subd. (b), 1108.)

Although Daniels's behavior occurred in front of family members and went unreported for years, both Mother and Brother started noticing an

8

unusual relationship between Daniels and E. when E. was approximately 12 or 13. Mother and Brother also testified Daniels's acts were gradual and normalized over the years, with Mother acknowledging that in hindsight Daniels's behavior was obviously inappropriate. Schultz testified that this is common in child abuse cases, where perpetrators progressively increase their inappropriate behavior to hide it, and the abuse is not evident to others. As such, even though Mother did not notice Daniels grazing E.'s buttocks and breasts until E. was 15 or 16, a jury could reasonably conclude that both Mother and Brother's observations were consistent with E.'s testimony and a typical residential molest case.

Finally, E.'s credibility is not a matter that we reevaluate on appeal. (*People v. Helzer, supra,* 15 Cal.5th at p. 646.) Although E. suffered from mental illness and accused several other men of sexual abuse, defense counsel extensively cross-examined E. on those and other issues and the jury nonetheless found her credible. Further, nothing about E.'s testimony was impossible or inherently improbable. (See, e.g., *People v. Elliott* (2012) 53 Cal.4th 535, 585 ["Unless it describes facts or events that are physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction."].) E.'s testimony was also corroborated by her documented attempt to report Daniels to CPS, as well as Schultz's and Detective Allmon's testimony that child sex abuse victims usually do not recall all details of continuous abuse and often delay reporting the perpetrator.

Based on the foregoing, there was sufficient evidence for a jury to conclude that Daniels committed each lewd act with sexual intent and that E. met the age requirements for each offense.

9

*B.* *The Trial Court Did Not Err in Instructing the Jury with CALCRIM No. 207*

Daniels argues the version of CALCRIM No. 207 used by the trial court incorrectly stated that the offenses allegedly occurred "on or about" specific dates instead of between specific date ranges. Daniels claims that as given, CALCRIM No. 207 eliminated the age element of the offenses and permitted the jury to convict him twice for the same acts because there was nothing further to distinguish the offenses. We disagree.[4]

1. Additional Background

The written version of CALCRIM No. 207 used by the trial court states:

> It is alleged that the crimes occurred on or about:
> – Counts 1 & 2: April 24, 2013 and April 23, 2014;
> – Counts 3 & 4: April 24, 2014 and April 23, 2015;
> – Counts 5, 6, 7, & 8: April 24, 2015 and April 23, 2016;
> – Counts 9, 10, 11, & 12: April 24, 2016 and April 23, 2017
>
> The People are not required to prove that the crimes took place exactly on those days but only that they happened reasonably close to those days.

However, the trial court's oral instructions stated: "it's alleged in our case the crimes occurred on or about — as to counts 1: April 24th, 2013, *through* April 23rd, 2014. Counts 3 and 4: April 24th, 2014, *through* April 23, 2015. Counts 5, 6, 7, 8: April 24th, 2015, *through* April 23rd, 2016. Counts 9, 10, 11, and 12: April 24th, 2016, *through* April 23, 2017."

---

[4] This issue has not been forfeited as asserted by respondent. Daniels's claim "is that the instruction misstated the elements of the crime, an assertion that may be considered on appeal despite the absence of an objection below." (*People v. Nelson* (2016) 1 Cal.5th 513, 543.)

The trial court also instructed on unanimity in accordance with CALCRIM No. 3501 as follows:

> The defendant is charged with committing a lewd act upon a child under the age of 14 and committing a lewd act upon a child 14 or 15 years of age. Counts 1 and 2 pertain to conduct that occurred sometime during the period of April 24, 2013 to April 23, 2014. Counts 3 and 4 pertain to conduct that occurred sometime during the period of April 24, 2014 to April 23, 2015. Counts 5 through 8 pertain to conduct that occurred sometime during the period of April 24, 2015 to April 23, 2016. Counts 9 through 12 pertain to conduct that occurred sometime during the period of April 24, 2016 to April 23, 2017.
>
> The People have presented evidence of more than one act to prove that the defendant committed these offenses. You must not find the defendant guilty unless:
>
>> 1. You all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed for each offense;
>
> OR
>
>> 2. You all agree that the People have proved that the defendant committed all the acts alleged to have occurred during this time period and have proved that the defendant committed at least the number of offenses charged.

The trial court further explained pursuant to CALCRIM No. 3515 that "[e]ach of the counts charged in this case is . . . separate. You must consider each count separately and return a separate verdict for each one."

As for the elements of the offenses, the trial court used CALCRIM No. 1110 to instruct the jury that Daniels was "charged in counts 1–4 with committing a lewd or lascivious act on a child under the age of 14 years," which requires that the People prove that the victim "was under the age of 14

11

years at the time of the act." Similarly, pursuant to CALCRIM No. 1112, the trial court informed the jury that Daniels was "charged in counts 5–12 with a lewd or lascivious act on a 14 or 15 year-old child," under which the People must establish that the victim "was 14 or 15 years old at the time of the act."

Finally, the trial court informed the jury that "[t]he People presented evidence of other behavior by [Daniels] that was not charged in this case[ ]that [Daniels] touched the victim's buttocks and breasts and grinded on her when she was 16, 17, and 18 years of age, and sent text messages with sexual content." Using CALCRIM Nos. 1191A and 375, the trial court instructed that these other acts may be used "to prove [Daniels's] identity, intent, motive, and lack of mistake or accident," or "that [Daniels] was likely to commit and did commit lewd and lascivious acts against a child under 14 and lewd and lascivious acts of a child of 14 or 15 years of age, as charged here."

In closing argument, the prosecutor stated, "Counts 1 through 4 is lewd act upon a child under the age of 14," "[s]o this is when [E.] is under the age of 14, when she's 12 and 13. Those are the dates that it ranges up to." The prosecutor also stated, "in counts 5 through 12, it's a little different. You see, now we're at a little bit older of a kid, 14 to 15 years old. . . . [E.] was 14 or 15 years old at the time." Continuously referencing E.'s age in relation to the various counts, the prosecutor also explained that the People did not charge Daniels for any of the acts that occurred when E. was 16 and older. The prosecutor also reiterated that the jury had to find a separate act for each count. For example, the prosecutor identified counts 1 and 2 as covering the period of "April 24th, 2013, to April 23, 2014," and stated, "for that year, there is two charges. One time, he groped her buttocks with a sexual intent. [And a]nother time. That is it."

12

While deliberating, jurors sent two notes to the court. Neither question concerned the law nor jury instructions.

2. Standard of Review

We independently review a claim of instructional error. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) " 'If a jury instruction is ambiguous, we inquire whether there is a reasonable likelihood that the jury misunderstood and misapplied the instruction.' [Citation.] In making this determination, we consider the challenged language ' "in the context of the instructions as a whole and the trial record." ' " (*People v. Ervin* (2021) 72 Cal.App.5th 90, 107.) Circumstances relevant to this determination include the arguments of counsel, whether the jury sought clarification of the challenged instruction, and whether defense counsel objected. (*People v. Young* (2005) 34 Cal.4th 1149, 1202–1203.)

" ' " '[T]he absence of an essential element in one instruction may be supplied by another or cured in light of the instructions as a whole.' [Citation.]" ' [Citation.] 'Jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions.' " (*People v. Fiore* (2014) 227 Cal.App.4th 1362, 1378.)

3. Analysis

The written version of CALCRIM No. 207 given to the jury did not accurately state the dates alleged in the information. It stated the crimes in the various counts allegedly occurred "on or about" two specific dates instead of "on or about and between" those specific dates. The instruction was also incomplete regarding the timing that the prosecution needed to establish. It correctly stated that the precise date need not be proven but omitted the required bookends for the offenses set by E.'s date of birth. Accordingly, CALCRIM No. 207 by itself was ambiguous.

13

However, in assessing how the jury interpreted CALCRIM No. 207, we must look at the entire record.  (*People v. Ervin, supra,* 72 Cal.App.5th at p. 107.)  The trial court's unanimity instruction and oral recitation of CALCRIM No. 207 correctly stated the date ranges alleged in the information.[5]  These dates corresponded with E.'s birthday, limiting the offenses in counts 1–4 to when E. was under 14 and the offenses in counts 5–12 to when she was 14 or 15.  Associating each count with time periods would also be reasonable based on E.'s testimony, in which she described the lewd acts occurring during certain periods of her life, as opposed to date-specific incidents.

Additionally, four other instructions correctly informed the jury of the offenses' age requirements:  CALCRIM Nos. 1110 and 1112 stating the elements of the offenses, the unanimity instruction in CALCRIM No. 3501, and CALCRIM No. 1191A regarding the uncharged sex offenses.  The prosecutor also reiterated that the offenses were age specific in closing argument.

Regarding the various charged and uncharged acts alleged by the People, the unanimity instruction (CALCRIM No. 3501) informed the jury that they all had to agree either on a specific act for each offense, or that Daniels committed all acts alleged.  CALCRIM No. 3515 further advised the jury that they must separately decide each count.  The jury's use of the uncharged acts occurring when E. was 16 or older was also clarified by CALCRIM Nos. 1191A and 375, which correctly informed the jury how to use that evidence when considering the charged crimes.  The prosecutor

---

[5]    "Although this court gives priority to the written version of an instruction when a conflict exists between the written and oral versions, the jury is not informed of this rule.  It is thus possible the jury followed the oral instruction."  (*People v. Wilson* (2008) 44 Cal.4th 758, 804.)

reinforced these principles, reminding the jury that it had to find separate acts in order to convict defendant of each count, and that the acts occurring when E. was 16 or older were not charged but may be considered in determining the charged acts.

Finally, there is no indication that the jury was confused by CALCRIM No. 207 as given. The jury's deliberations were short, and they did not ask the trial court any questions regarding the law or jury instructions. Moreover, defense counsel did not object to the instruction. "[I]f the instruction[] w[as] susceptible of the interpretation [Daniels] now asserts, counsel likely would have objected at trial on this basis. Such an omission suggests that ' "the potential for [confusion] argued now was not apparent to one on the spot." ' " (*People v. Young, supra,* 34 Cal.4th at p. 1203.)

In sum, the count specific time frames, age requirements, and separate nature of each offense were explained in several jury instructions. These principles were reiterated by the prosecutor in closing argument, and they were consistent with the evidence presented. Nothing in the record indicates the jury misunderstood these concepts. Under these circumstances, it is not reasonably likely a juror would have concluded that: (1) acts occurring "reasonably close to" but after E.'s 14th birthday would suffice to convict Daniels of counts 1 through 4; (2) acts "reasonably close to" but before or after the time E. was 14 or 15 were sufficient for counts 5 through 12; or (3), that that one act could serve as the basis for more than one count.

We acknowledge that the bench notes for CALCRIM No. 207, state the "instruction should not be given: (1) when the evidence demonstrates that the offense was committed at a specific time and place and the defendant has presented a defense of alibi or lack of opportunity; or (2) two similar offenses are charged in separate counts." Daniels cites the second situation from the

15

bench notes (similar offenses charged in separate counts) to argue CALCRIM No. 207 was improperly given in this case.

Despite the superficial appeal of this argument, the five cases cited in the bench notes to support CALCRIM No. 207's limitations concern different circumstances from those present here. The first three cases (*People v. Jennings* (1991) 53 Cal.3d 334, 358–359; *People v. Jones* (1973) 9 Cal.3d 546, 557; *People v. Barney* (1983) 143 Cal.App.3d 490, 497–498) deal with the first situation referenced in the bench notes (alibi or lack of opportunity defense), which is inapplicable to Daniels as he claimed no such defense.

The fourth and fifth cases (*People v. Gavin* (1971) 21 Cal.App.3d 408, 418–420; *People v. Deletto* (1983) 147 Cal.App.3d 458, 474–475), as well as the third case (*People v. Barney, surpa,* 143 Cal.App.3d at p. 498 & fn. 10.) address the scenario where a charged crime occurred on a specified date, but the evidence suggested additional crimes on different dates. The concerns in those cases were that the jury may not unanimously agree which act constituted the offense or they might convict the defendant for an uncharged act.

But here, any concerns regarding unanimity were "cured" by the unanimity instruction given to Daniels's jury. (*People v. Gordon* (1985) 165 Cal.App.3d 839, 857 [finding that the CALJIC counterparts to CALCRIM Nos. 207 and 3501 "read in conjunction, . . . instruct a jury confronted with an 'on or about' allegation that while it need not find that the crime was committed on the precise date alleged . . . it must nonetheless unanimously agree that defendant committed the same act."].) Additionally, for the reasons discussed above, it is not reasonably likely the jury relied on CALCRIM No. 207's "on or about" language to convict Daniels for uncharged acts when the other jury instructions and the prosecutor's closing argument

clearly delineated the limitations of other acts evidence and the date and age requirements for the charged offenses.  Accordingly, the concerns supporting the bench notes were not present in this case.

Based on the foregoing, it is not reasonably likely the jury misunderstood CALCRIM No. 207 to eliminate the offenses' age requirements or to allow multiple convictions for the same act.  We therefore see no instructional error.

## IV. DISPOSITION

The judgment is affirmed.


RUBIN, J.

WE CONCUR:


IRION, Acting P. J.


CASTILLO, J.

17